IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
STATE FARM MUTUAL AUTOMOBILE    )
INSURANCE COMPANY,              )
                                )
          Plaintiff,            )
                                )
     v.                         )        1:19CV902
                                )
TIMOTHY D. LAWSON, Administrator)
for the Estate of AMBER FRANCES )
LAWSON, Deceased,               )
                                )
          Defendant.            )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court upon the cross-motions for summary judgment filed by Plaintiff State Farm Mutual Automobile Insurance Company ("Plaintiff" or "State Farm"), (Doc. 15), and Defendant Timothy D. Lawson, ("Defendant" or "Mr. Lawson"), Administrator for the Estate of Amber Frances Lawson ("Amber"), (Doc. 21). These motions are ripe for consideration.

I.  **STATEMENT OF THE FACTS**

The parties do not dispute any of the facts at issue, merely whether the stated facts are adequate for Amber Frances

Lawson to constitute a "resident" of her parents' home at the time of the accident.

On May 2, 2017, 31-year-old Amber Lawson was killed in a car accident while driving her 2004 Mazda. In a wrongful death action that followed, the administrator of Amber's estate – her father, Timothy Lawson – alleged that she was insured by State Farm under his policy. State Farm filed this action in response to this claim "seeking a determination of its rights and responsibilities under two policies of insurance issued by State Farm to Defendant Lawson." (Doc. 16 at 2.)[1] The relevant policy issued by State Farm covered Mr. and Mrs. Lawson from April 29, 2017 through October 29, 2017. (Complaint (Doc. 1), Ex. B, Personal Auto Policy ("Policy") (Doc. 1-2) at 1-26.)[2]

Amber was not an explicitly-insured driver under the policy, nor was her Mazda directly covered by the policy. Amber had her own insurance policy through GEICO on her Mazda. (Pl.'s Br. in Supp. of Mot. for Summ. J. (Doc. 16), Ex. A, Examination under Oath of Timothy Dale Lawson ("Lawson Dep.") (Doc. 16-1) at

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[2] A second policy, which contained identical language, was issued to the Lawsons from April 29, 2017 to July 19, 2017. (See (Doc. 1-2) at 27-57.)

37.) However, the Lawsons' State Farm policy did extend to certain family members. Such family members are defined in the contract as "a[ny] person related to you by blood, marriage or adoption who is a resident of your household." (Policy (Doc. 1-2) at 2.) Although Amber was not listed as an official driver on the policy, her name did appear on associated documents that State Farm sent to the Lawsons. More specifically, on various policy renewal statements, Amber is listed as either a "Principal Driver" or "Other Household Driver." (Doc. 20 at 4-5.) The documents define "Other Household Driver" as an individual who is "driving other vehicles in [the] household." (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Cross Motion for Summ. J., Attach. 1, Declaration of Timothy D. Lawson ("Lawson Decl.") (Doc. 20-1) at 12.) On yet another document, she is listed under "Driver(s) of your Vehicle(s)" as a "driver[] of the vehicle(s) on [the] policy." (Id.) The Lawsons' other two sons, neither of whom live at home with the Lawsons, are also listed as drivers on these documents in the same fashion as Amber. (Lawson Dep. (Doc. 16-1) at 57-60.)

Amber's parents live at 1630 South Stokes School Road in Walnut Cove, North Carolina ("Stokes house"). (Id. at 4.) As an adult, Amber lived in various rentals but "had some breaks where she stayed at [her parents'] house . . . on a permanent basis."

(Id. at 16-17.) Eventually, Amber moved in with her fiancé, Leon Fulp ("Fulp"), in a rental at 605 Hwy. 65, where they lived together for more than a year. (Id. at 10, 16.) Upon starting a nursing program in August of 2016, Amber – along with Fulp - moved into his parents' home at 1054 Crestview Drive in Walnut Cove ("the Crestview house"). (Id. at 15.) Amber put her furniture into a storage unit, (id. at 20-21), and switched her address on various official documents from 605 Hwy. 65 to the Crestview house.

During all of this time, Amber still kept some personal belongings at the Stokes house, along with her two dogs that she regularly fed and took care of. She visited her parents' house regularly, which was only nine miles away from Fulp's parents' home. (Id. at 21-22.) She kept "clothing and nursing uniforms," (Lawson Decl. (Doc. 20-1) at 4), as well as "shoes, personal items, pictures, [and] photos" at her parents' house on Stokes, (Lawson Dep. (Doc. 16-1) at 18). She retained her own bedroom at the house "that was the same as it was when she lived there." (Id.) Amber "ate meals, cleaned the house, did her laundry . . . and did most of her homework" at the Stokes house. She had her own key to the house. (Lawson Decl. (Doc. 20-1) at 4-5.) Finally, Amber's driver's license listed the Stokes house address on it at the time of the accident. (Id. at 3.) She

frequently drove all of the Lawsons' cars. (Lawson Dep. (Doc. 16-1) at 55.)

Amber came to the Stokes house almost every day. (Id. at 51.) While Amber came to her parents' house often, she did not bear responsibility for household chores, though there was an "understanding that she would clean up and take care of whatever area she used." (Id. at 25.) She was not allowed to spend the night with her fiancé at the Stokes house, per her parents' rules, and only came over by herself or with Fulp when her parents were out of town. (Id. at 25-26.) Due to this rule, Amber rarely spent the night at the Stokes house when her parents were in town, instead visiting only during the day. (Id.)

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case."

Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . . , the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Summary judgment should be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." McLean, 332 F.3d at 719 (citing Liberty Lobby, 477 U.S. at 247–48).

When facing cross-motions for summary judgment, this court reviews "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (citation and internal quotation marks omitted).

"The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). The Supreme Court

of North Carolina has reviewed the application of the policy term "resident" upon a motion for summary judgment, noting that "a dispute regarding coverage under an insurance policy is appropriate for resolution by summary judgment where the material facts and the relevant language of the policy are not in dispute and the sole point of contention is 'whether events as alleged in the pleadings and papers before the court are covered by the policies.'" N.C. Farm Bureau Mut. Ins. Co. v. Martin, 376 N.C. 280, 285, 851 S.E.2d 891, 895 (2020) (quoting Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 690–91, 340 S.E.2d 374 (1986)). The only existing dispute is over whether Amber was covered by the term "resident" in the State Farm policy – just as was the case in N.C. Farm Bureau, 376 N.C. 280. The "material facts and the relevant language of the policy" are not in dispute, and summary judgment is therefore appropriate in this case. Id.

### III. **ANALYSIS**

Plaintiff argues that Amber should no longer have been considered a resident of her parents' home under the State Farm policy at the time of her passing. Defendant argues, to the contrary, that Amber was indisputably a legal resident of her parents' home. This is a question of law, not a question of

fact. This court agrees with Plaintiff and finds that summary judgment in favor of Plaintiff is appropriate.

Insurance policies are interpreted like any other contract: the plain meaning of the document controls. McDowell Motor Co. v. New York Underwriters Ins. Co., 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951). If the language in a policy is ambiguous, other evidence can be considered in determining the intent and scope of the policy. Id. at 254, 63 S.E.2d at 541 ("Insurance contracts will be construed according to the meaning of the terms which the parties have used and unless such terms are ambiguous, they will be interpreted according to their usual, ordinary, and commonly accepted meaning."). "Likewise, where a policy of insurance is reasonably susceptible to two constructions, one favorable to the insured, the other to the insurer, the construction favorable to the insured will be adopted since the insurer chose the language contained in the policy." Id. at 253, 63 S.E.2d at 540; see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 364 N.C. 1, 10, 692 S.E.2d 605, 612 (2010). Here, the crucial term in the State Farm policy is "resident". At issue is whether Amber qualifies as a "resident" of the household under the policy. The policy reads as follows:

> We will also pay compensatory damages which an insured
> is legally entitled to recover from the owner or

operator of an underinsured motor vehicle because of
bodily injury sustained by an insured and caused by an
accident. The owner's or operator's liability for
these damages must arise out the ownership,
maintenance or use of the underinsured motor vehicle.
We will pay for these damages only after the limits of
liability under any applicable liability bonds or
policies have been exhausted by payments of judgments
or settlements, unless we:

1.  Have been given written notice in advance of
settlement between an insured and the owner or
operator of the underinsured motor vehicle; and

2.  Consent to advance payment to the insured in the
amount equal to the tentative settlement.

. . . .

Insured as used in this Part means:

1.  You or any family member.

2.  Any other person occupying

    a.  your covered auto; or

    b.  any other auto operated by you.

3.  Any person for damages that person is entitled to
recover because of bodily injury to which this coverage
applies sustained by a person listed in 1. or 2. above.

(Policy (Doc. 1-2) at 4.) Family member is defined in the Lawsons' policy as "a person related to you by blood, marriage or adoption who is a resident of your household." (Id. at 2.) There is no dispute that Amber Lawson is a relative of the policyholder. While "resident" does not have a single, set definition in North Carolina law, courts have generally held that "in order to be deemed residents of the same household,

-9-

parties must have lived in the same dwelling for some meaningful period of time under circumstances demonstrating an intent to form a common household." N.C. Farm Bureau Mut. Ins. Co. v. Martin, 376 N.C. 280, 295, 851 S.E.2d 891, 901 (2020). North Carolina courts have acknowledged the "flexible, elastic, slippery and somewhat ambiguous" definition of the word "resident" in insurance contracts. Great Am. Ins. Co. v. Allstate Ins. Co., 78 N.C. App. 653, 656, 338 S.E.2d 145, 147 (1986). Thus, courts in this state have held that "resident'' and similar terms "should be given the broadest construction and that all who may be included, by any reasonable construction of such terms, within the coverage of an insurance policy using such terms, should be given its protection." Id.

North Carolina courts have previously addressed the question of adults' residency at their parents' home where they keep some personal effects and spend substantial time. In Jamestown, the court found that a son was a resident of his father's house because "he had no other home and thought of his father's house as his home." Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 433, 146 S.E.2d 410, 413 (1966). Factors the court considered also included (1) where his belongings were, (2) what address he used for mail, (3) where he slept. See id. at 433, 146 S.E.2d at 412-13. The son used his

-10-

father's house as his "permanent mailing address" and "slept in the room which he had used when he was growing up." Id. Similarly, North Carolina courts found a woman was a resident of her parents' home in Mooring, where the adult child was "dependent on . . . the policyholder[] for all her basic needs," including "furnished, rent-free housing" and "a vehicle and automobile insurance . . . ." Integon Nat'l Ins. Co. v. Mooring, No. COA14-1303, 2015 WL 2062043, at *5 (N.C. Ct. App. May 5, 2015). In that case, the policyholder paid for all of her daughter's gas, paid her "utilities and expenses," and "gave her spending money." Id. Ultimately, even though the daughter lived in a separate home - owned by the policyholder – she was "wholly dependent" on the parental policyholder and was deemed a resident of the policyholder's household. Id.

By contrast, in Bruton v. North Carolina Farm Bureau Mutual Insurance Company, the individual "spent the majority of his time with his girlfriend in his mobile home," and listed the address of that mobile home on his health insurance, bank account, taxes, and other bills. Though he "spent two to three weekends per month at his father's house and stored some toiletries there," the court found he was not a resident of his father's home, as "[a]t most, [the] occasional weekend visits

-11-

[to his father's house] could be characterized as family visits." 127 N.C. App 496, 498, 490 S.E.2d 600, 602 (1997).

This case is far more comparable to <u>Bruton</u> than <u>Mooring</u> or <u>Jamestown</u>. While some of Amber's belongings were at her parents' home, the majority were at the Crestview house. Amber listed 1054 Crestview as her address on every official document she filled out, further supporting the conclusion that she was not a resident at her parents' home. On her school registration, 1054 Crestview is listed as her mailing address. (Doc. 16-18.) Amber Lawson's 2016 W-2 form listed 1054 Crestview as her address for tax purposes. (Doc. 16-15.) Her credit card bills also came to 1054 Crestview. (<u>See</u> Docs. 16-8, 16-10.) In his deposition, Mr. Lawson acknowledges that "with her living over there," Amber's billing address for her car payments "had been changed to that address." (Lawson Dep. (Doc. 16-1) at 30.) Amber also slept at 1054 Crestview most nights and spent most of her days there. During her deposition, Mrs. Lawson admitted that 1054 Crestview is where Amber "went most days every day," when not at work or school. (Doc. 16-2) at 18.) Even prior to moving to 1054 Crestview, Amber did not use her parents' home as her address – her official documents list her previous address as 605 N.C. Highway 65 East in Walnut Cove, the home she shared with Fulp before moving into his parents' house. (<u>See</u> Doc. 16-13 at 2.)

-12-

Finally, the fact that Amber was listed as a driver on the other, non-policy documents from State Farm does not alter this court's finding. The policy itself is the binding document: the court has a "duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used." Fid. Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). Defendant's coverage expectations do not alter the court's analysis, as those expectations contradict "the express language of the insurance contract." Bruton, 127 N.C. App. at 498, 490 S.E.2d at 602 (denying coverage where plaintiff "argues that he was covered under his father's policy because he had a reasonable expectation of coverage because his name was listed on the declarations page of the insurance policy as a driver").

## IV.  CONCLUSION

There is no dispute over the facts of Amber's residence, merely over whether the facts as agreed-upon meet the legal definition of "resident" written into the State Farm policy. This court finds they do not.

For the aforementioned reasons, no genuine dispute of material fact remains at this stage and summary judgment will be granted in favor of Plaintiff.

-13-

This court also notes that attached to Plaintiff's brief, (see Doc. 16, Ex. C, et seq.), and corrected brief, (Doc. 17, Ex. C, et seq.), are several documents that contain certain private information. That information should be redacted. See Fed. R. Civ. P. 5.2. This court will therefore seal the summary judgment brief and the attachments and the corrected brief and the attachments and direct Plaintiff to re-file the brief and attachments, redacting all personal information as required by Fed. R. Civ. P. 5.2. Although Amber Lawson is deceased, this court has concern that this personal information could still be abused.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. 15), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment, (Doc. 21), is **DENIED.**

**IT IS FURTHER ORDERED** that the brief in support of the motion for summary judgment, (Doc. 16), and the attachments, (Docs. 16-1 through 16-19), and the corrected brief, (Doc. 17), and the attachments, (Docs. 17-1 through 17-19), are **SEALED** by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall file a brief and the same attachments in redacted form in accordance with Fed. R.

Civ. P. 5.2 within ten (10) days of the date of the Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE.**

A judgment reflecting this Memorandum Opinion and Order will be entered upon Plaintiff's filing of a redacted versions of the brief and exhibits as required herein.

This the 10th day of June, 2021.

                                         _____
                                         United States District Judge